### IN THE UNITED STATED DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| DAVID PLATTA | * | |
| | * | |
| Plaintiff, | * | Civ. Action File No._____ |
| v. | * | **JURY TRIAL DEMANDED** |
| GRAY MEDIA GROUP, INC. | * | |
| D/B/A, WTVM-TV, | | |
| a/k/a GRAY TELEVISION, | * | |
| INC., | | |
| | * | |
| DEFENDANT | | |
| _____ | * | |

## <u>COMPLAINT</u>

Plaintiff David Platta, ("Plaintiff" or "Mr. Platta") hereby files this

Complaint against **Gray Media Group, Inc., a/k/a Gray Television, Inc.,**

**d/b/a WTVM-TV** ("Defendant", "Company" or "Gray"). In support of

his Complaint, Plaintiff respectfully shows this Court as follows:

## INTRODUCTION

1.      Plaintiff David Platta was the well-known and beloved 62- year-old[1] Sports Director for WTVM-TV, the Gray television station located in Columbus, Georgia.  After an incredible *36 years* of loyal and stellar service to Gray, effective September 15, 2021, Mr. Platta was abruptly terminated by Gray when Gray could not force him to abdicate his sincerely held religious beliefs which prohibited him from injecting into his body the experimental and unapproved COVID-19 Vaccine—known to be derived from aborted human fetal cells. In August 2021, Gray mandated that all its 8,000 or so employees be vaccinated with the experimental Vaccine or they would be fired.

2.      As a direct result of Plaintiff's unchallengeable sincerely held religious beliefs, which Gray illegally failed and refused to accommodate, Plaintiff was forced out of the Company in the most professionally humiliating and illegal manner.

3.      This unceremonious expulsion was despite his three-year employment contract dated September 3, 2020--which provides for continued employment through **September 2, *2023***. See Exhibit A (Plaintiff's Employment

---

[1] He is now 63.

Contract).

4.      Apparently, his exercise of his religious beliefs by refusing the fetal-cell-laden Vaccine, maintaining his spiritual and physical bodily integrity,  and asking Gray for an  accommodation was illegally characterized by Gray as a "violation of policy" in an attempt to escape the requirements of his employment contract; prevent him from getting unemployment compensation; and punish him for daring to stand up for his faith rather than comply with Gray's illegal and dangerous mandate requiring injection of the experimental COVID Vaccine into the bodies of all Gray employees.

5.      To treat Mr. Platta, who is 63 years old and who in February 2023 is to be inducted into the Chattahoochee Valley Sports Hall of Fame, in this intentionally abusive way constitutes intentional infliction of emotional distress and violates the multiple laws described herein.

## SUMMARY OF CAUSES OF ACTION

6.      This action is for all damages Plaintiff has suffered as a result of Defendant's  religious discrimination, retaliation, and failure to accommodate his religious beliefs under **Title VII** of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, et seq. ("Title VII"); Defendant's "regarding Plaintiff as" disabled under the American Disabilities Act (As Amended ('**ADAAA"**) and discriminating against him because of it; Defendant's deprivation of Plaintiff's

Constitutional and other rights under color of state law in violation of **42 USC §1983**; and related state law claims, including breach of contract; intentional infliction of emotional distress; practicing medicine without a license and failure to obtain informed consent; and negligence.

7.      Plaintiff seeks all damages afforded by law, including without limitation, contract damages, back pay, front pay, compensatory damages, punitive damages, interest, attorney's fees and costs for all the legal wrongs he has suffered at the hands of Defendant in an amount to be proven at trial.

## JURISDICTION AND VENUE

8.      Plaintiff's Title VII, §1983, and ADAAA claims present important federal questions over which this Court has jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. §2000e-5(f)(3) (Title VII),  42 U.S.C. § 12101 (the Americans with Disabilities Act, As Amended ("ADAAA")) and 42. U.S.C. § 1983 (deprivation of rights under color of state law).

9.      This Court has pendant jurisdiction over Plaintiff's Georgia state law claims pursuant to 28 U.S.C. § 1367.

10.      Venue is appropriate in this court for all of Mr. Platta's claims pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because Defendant

is headquartered in Atlanta, Georgia and thus resides in this judicial district.

Additionally, upon information and belief, decisions with respect to policies

causing injury to Plaintiff were made in and issued from Defendant's headquarters

in Atlanta.  In addition, this claim went through the EEOC process in Atlanta, and

Plaintiff has counsel in Atlanta.  Plaintiff lives in Columbus, Georgia, and his

injuries arose from actions in Atlanta and Columbus.  Plaintiff submits himself to

the jurisdiction of this court.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11.    Mr.  Platta filed a timely charge with the Equal Employment

Opportunity Commission ("EEOC") detailing his charges of discrimination under

applicable laws. A true and accurate copy of the Charge, incorporated Charge

Narrative, and Exhibits filed with the EEOC are attached hereto as Exhibit B and

are incorporated herein.

12.    Mr.  Platta received from the EEOC on October 17, 2022 a Determination

and Notice of Rights ("Right to Sue") providing him the right to bring his claim to court

within ninety (90) days of the date he received the Notice.  This Complaint is timely

filed within this 90-day period, and Plaintiff has complied with all other conditions

precedent to the institution of this lawsuit. A true and accurate copy of the Notice

of the Right to Sue is attached hereto as Exhibit C and is incorporated herein.

## PARTIES

13.     Mr.  Platta is a citizen of the United States and a resident of the State of Georgia. He resides at 6214 Goodwin Drive in Columbus, Georgia, 31909.

14.     Mr.  Platta was an employee of Defendant at all times material to this Complaint, until he was terminated by Defendant on September 15, 2021, **after 36 years of employment.**

15.     Mr.  Platta is a Christian and a member of a protected class under Title VII.

16.     Defendant, Gray Media Group, Inc.,  is a Delaware corporation registered to conduct business in this state.  Its principal place of business is 4370 Peachtree Road, NE, Suite 400, Atlanta, GA  30319.  It has previously operated and/or been known as Gray Television Group, Inc., Gray Television and Gray TV. Upon information and belief, all these corporate names refer to the same company, i.e., Defendant Gray Media Group, Inc. ("Gray").

17.     Defendant may be served with process through its registered agent, CT Corporation System, at 289 S. Culver St. Lawrenceville, GA  30046-4805, USA.

18.     According to its website (https://gray.tv/), Gray is a leading media

6

company and the largest owner of top-rated local television stations and digital assets in the United States.

19.     Gray is the second largest television broadcaster in the nation, with television stations serving 113 markets that reach approximately 36 percent of the US television households.

20.     Gray has approximately 8,000 employees nationwide.

21.     Upon information and belief, Gray is operated by a Board of Directors, corporate officers and others in leadership positions.  None of these decision makers are doctors or health care providers or medical specialists of any kind.

22.     One of Gray's many markets was in Columbus, Georgia, where Gray operated as **WTVM-TV, Channel 9.**

23.     Defendant employed Plaintiff at WTVM-TV in Columbus for  **36 years.**     During these many years, Plaintiff was the popular, beloved Sports Director on WTVM-TV, Channel 9 in Columbus.

24.     Plaintiff performed his broadcasting services pursuant to a series of consecutive  three-year contracts.  His latest contract, Exhibit A, was executed on September 3, 2020, and was to continue through September 2, 2023.

25.     The contract required Plaintiff to work exclusively for Defendant and

prohibited him for a year following termination for any reason from, among other things, performing for another employer the same services he provided to Defendant. See Exhibit A.

26.     Plaintiff is an extremely intelligent, talented, and  loyal employee and was so to Gray during his entire 36-year tenure.  His stellar performance resulted in many awards.

27.     Plaintiff was highly regarded as very capable, friendly and personable--and excellent at his job.  In fact, in February 2023, he is to be inducted into the Chattahoochee Valley Sports Hall of Fame for his decades of superior sportscasting work.  He has been married for 37 years to his first and only wife, Victoria.

28.     As a Christian, Plaintiff's sincere beliefs are based on the tenets of the Holy Bible as the inspired Word of God.  These include the strong belief that life is sacred and taking a life, through abortion or otherwise,  is morally wrong.  Also morally wrong is any involvement in an act that supports or uses abortion in any way.  Pursuant to his faith, the physical body is considered to be the Temple of God and is not to be desecrated in any way.

## **STATEMENT OF FACTS**

29.     Vaccine development is ordinarily a long, complex process, often lasting 10-15 years, and entails a combination of public and private involvement.[2]

30.     In 2020, the World Health Organization declared that a virus known as COVID-19 had spread across the world and caused a pandemic.

31.     In 2020, the COVID-19 vaccine was hastily developed to address the alleged pandemic (known as the "COVID Vaccine," the "Vaccine," the "Vax" or the "Jab").

32.     Notwithstanding the fact that Vaccine development and initial testing normally takes 10 to 15 years, the COVID Vaccine was developed abnormally quickly and tested for only about two months.

33.     In fact, the Vaccines were put together as part of a program dubbed "Operation WarpSpeed" —i.e., in record time-- and were unleashed on the public by the Federal Drug Administration ("FDA") pursuant to an Emergency Use Authorization ("EUA") in December 2020.

34.     Upon information and belief, no vaccine has ever been developed, tested, and authorized for even experimental use in such a short time period.

35.     The COVID Vaccine is well known to have been derived from

---

[2] www.Historyofvaccines.org/vaccines-101/how-are-vaccines-made/vaccine-development-testin-and-regulation.

aborted fetus cell lines.  This is undisputed.

36.    The Vaccine is and was at all relevant times well known to both its promotors and its adversaries to be associated with serious medical hazards and death, including  myriad significant adverse health events and conditions.

37.    Information demonstrating the significant risk of the Vaccine was and is available online on US government websites, including the public websites of the Food and Drug Administration ("FDA"), Center for Disease Control ("CDC") and Health and Human Services ("HHS"), as well as other websites,  and was at all times publicly available during the time corporate decisions about mandating the Vaccine were being made by Defendant.  See, e.g.,  the Vaccine Adverse Event Reporting System ("VAERS").  See, e.g., www.vaers.hhs.gov, https://openvaers.com/COVID-data and/or https://vaersanalysis.info/.

38.    The government and certain media aggressively in their broadcasts to the public tried during the relevant time period to inflate the risk (and fear) associated with the actual COVID-19 disease and minimize the substantial risks associated with the Vaccine.  In fact, the COVID-19 disease had a survival rate of approximately 98% or greater, depending on age and comorbidities, but the COVID-19 Vaccine had a **high risk** of causing serious, adverse medical events or death—**more than all of the vaccines kept track of on VAERS since 1990**

***combined***.[3] This information was available on the FDA/CDC websites, and other websites, even while simultaneously the FDA was communicating the mantra that the Vaccines were "safe and effective."

39.     Even more risk information has been revealed over time since 2021, including information only released due to successful Freedom of Information Act ("FOIA") and other lawsuits against the FDA and/or the CDC, demonstrating that the Vaccines are and were extremely hazardous at the time Defendant was demanding that each of its thousands of employees inject  the Vax into their bodies or be fired.[4]

40.     In the late summer of 2021, Defendant distributed to its employees, including Plaintiff, multiple emails taking on itself the responsibility of assuring all its employees that, "***We* know** the approved COVID-19 Vaccines are extremely effective in preventing serious illness and reducing the spread of the

---

[3] Additionally, VAERS numbers are widely recognized to be grossly underreported and could easily be 10X higher than even those listed.

[4] It has recently been admitted by an official at Pfizer that the Vaccine was actually never developed or tested to curb the transmission of the COVID virus, despite intense government urging that getting the vaccine would stop to spread of the COVID virus, and thereby protect your fellow employees, friends and loved ones from catching the virus and becoming ill or dying.  Media, government and other statements to the effect the Vaccine would stop the spread of the virus were completely false, and now there are more vaccinated with COVID suffering and dying in hospitals and other places than unvaccinated patients.  It has been found that actually the Vaccine destroys one's immune system and thereby makes an individual more, not less, susceptible to catching COVID or other viruses and diseases.  Many other adverse medical consequences of the Vaccine have also been confirmed since 2020.

coronavirus," as if Gray leadership had personal or inside knowledge regarding the safety and efficacy of the Vaccines and was sharing this allegedly well-founded conclusion with its employees.

41.     These emails at first strongly encouraged Gray employees to choose to get vaccinated with the COVID Vaccine.

42.     However, the Vaccines were so hazardous that the FDA and/or CDC refused to release hidden information in their possession showing, e.g.,  the serious adverse health events and death caused by the Vaccines.

43.     Documents the FDA and/or CDC refused to disclose to the public included information and documents supplied by Pfizer and other Vaccine manufacturers and also the FDA/CDC's own data resulting from, among other sources, the V-Safe technology that was provided to vaccine takers as a vehicle to report to the FDA/CDC specified adverse health events.

44.     Notwithstanding, in 2021, even as Vaccine mandates were being demanded by President Biden[5] and being implemented by corporations around

---

[5] Although he had been earlier demanding that everyone get a vaccine, President Biden announced his intention to impose a national vaccine mandate on September 9, 2021. *See, e.g.*, Kevin Liptak & Kaitlan Collins, *Biden Announces New Vaccine Mandates that Could Cover 100 Million Americans*, CNN (Sept. 9, 2021), https://www.cnn.com/2021/09/09/politics/joe-biden-COVID-speech/index.html ("'We've been patient, but our patience is wearing thin, and your refusal has cost all of us,' Biden said, his tone hardening toward Americans who still refuse to receive a vaccine despite ample evidence of their safety and full approval of one . . . .")

the country, the FDA/CDC public VAERS  reports, among others, were showing

an extraordinary rise in COVID-Vaccine related deaths and adverse medical

events.  This information was available to the public, including Defendant's

management and employees,  openly on the FDA/CDC website via VAERS and

on other websites disseminating the information and conclusions of highly

credentialed physicians, researchers and scientists at the time Gray was

contemplating issuing a Vaccine mandate.

45.    Also, various other medications and treatments successful at treating

illness brought on by the COVID-19 virus were being communicated by various

highly credentialed physicians, researchers and scientists on publicly available

websites.

46.    Notwithstanding this information, President Biden and other

influential government officials (e.g., Dr. Anthony Fauci, Director of the National

Institute of Allergies and Infectious Diseases, part of the National Institute of

Heath ("NIH")) in 2021 continued to heavily push everyone to get vaccinated

with the COVID-19 Vaccine, and pressured private employers to mandate the

Vaccine.

47.    In April 2021, President Biden paid companies for mandating the

Vaccine via tax credits.

48.    On September 9, 2021, President Biden formalized the significant pressure he had been exerting on large corporations, among others, ever since the Vaccine was authorized under an Emergency Use Authorization ("EUA") in December 2020.  President Biden in his Speech of that date said he was ordering that companies with more than 100 employees must mandate vaccinations or weekly testing from all their employees.

49.    Upon information and belief, Gray did not bother to check the VAERS data or other reports outside of mainstream media that demonstrated clearly by extremely reputable doctors and scientists that the Vaccines were absolutely extremely risky and were causing significant medical injury and death. [6]

50.    Alternatively, if Gray did check the VAERS and other information showing that the Vaccines carried a high risk of injury or death, Gray Leadership nonetheless decided to inflict the risk of this Vaccine on all their thousands of employees, given, among other things, the extreme pressure by Biden and other government entities, including tax credits and other pressure exerted by Biden and other government entities.

60.    Upon information and belief, Gray did no due diligence of its own to determine whether it would be safe and reasonable to force all of its thousands of

---

[6] See, e.g., The Death Report, by Dr. V. Zelenko, a Nobel Prize nominee.

employees to be injected with the Vaccine, but instead relied on the pressure

exerted by Biden, parts of the CDC and FDA, Dr. Anthony Fauci[7], and the

mainstream media, which all regularly chastised those reluctant or refusing the

Vaccine injection for religious, medical or other reasons and attempted to instill

into the entire population extreme fear of a disease that had a recovery rate of

greater than 98%[8], falsely advocating that the Vaccine was the *only* way to escape

the serious, deadly COVID-19 disease.

61.     Although Gray Leadership was not comprised of doctors or other

medical personnel, health care providers or statisticians, none of these credentials

were necessary to obtain the concerning information on VAERS published openly

by the FDA/CDC, as well as many other websites and by multiple well-

credentialed authorities, showing how hazardous the Vaccines were. However,

having no medical background, they also had no legitimate authority to mandate a

medical procedure to thousands of employees about whom they knew nothing—

nothing about their medical or religious status or other circumstances which

would naturally affect a decision regarding whether a Vaccine was appropriate.

---

[7] See, Robert F. Kennedy, Jr., The Real Anthony Fauci, Skyhorse Publishing (2021),
[8] See Exhibit D, VAERS Analysis showing the number of COVID Vaccine-related reported deaths by date since the date the vaccine became available in 12/2020 through 9/2022.  See generally, www.vaersanalysis.info.

62.     Injecting a solution into his body knowingly derived from aborted fetus cell lines is an abomination and morally reprehensible to Plaintiff and many other Christians.

63.     Injecting an experimental and unknown solution into his body known to be the likely cause of myriad adverse health consequences or death is an abomination and morally reprehensible to Plaintiff and many other Christians.

64.   By August 16, 2021, given the Presidential, media, and governmental pressure to require vaccination, and, upon information and belief, having a close and intertwined relationship with the government and/or President Biden, Gray decided that all its 8,000 or so employees would be required to submit to this EUA Vaccine or be terminated.

65.     On August 16, 2021, an email was sent to all Gray employees stating that all Gray employees must get the COVID Vaccine promptly or be fired.  See Aug 16, 2021 email re "Important Announcement of Vaccination Policy," Exhibit E.[9]

---

[9] See also, Exhibit F,  BST Holdings v. OSHA, 5th Circuit , November 12, 2021 opinion where the 5th Circuit recognized there were "grave statutory and constitutional issues with the Mandate" proposed by OSHA at President Biden's direction.  Further, the court noted: "Debates over the Biden Administration's forthcoming vaccine mandate roiled the country throughout much of the Fall. For obvious reasons, the Mandate affects every person in America in one way or another." After a trip through the 6th Circuit, the Mandate in the form of an OSHA ETS was struck down by the U.S. Supreme Court on January 13, 2022 as such an invasive Mandate was beyond the

66.    Gray Leadership specifically said in this August 16, 2021 email that:

 "After extensive discussion among the GMs and officers this week, these individuals UNANIMOUSLY concluded that the increasing spread  of the coronavirus poses an **unfair risk** to fellow employees and their family members who are not eligible to get vaccinated."

 (Capitalization and bold emphasis in original.)  Exhibit J.

67.    Defendant continued to declare that the Gray leadership group "UNANIMOUSLY discussed, developed, and then approved expanding our vaccination policy to all employees" by requiring all managers, ***as a condition of employment*** to be fully vaccinated **by September 15, 2021**, and all other employees **by October 1, 2021.**

68.    Upon receiving this declaration, Mr. Platta had many questions which he diligently tried to get answered from appropriate Gray management and HR personnel.  No one was responding to or answering his questions, however.   See Exhibit J, Texts and Emails with Gray officials attempting to have an interactive discussion and get his questions answered.

69.    As perhaps the climax of Biden's campaign to pressure as many people and corporations as possible to take or mandate the Vaccine, on September 9, 2021, President Biden gave a speech to the people and corporations of the

---

power given to OSHA by Congress.  See, Exhibit G.

United States, to make clear he was not going to put up with the unvaccinated anymore.  The speech was clearly designed to label "all" the unvaccinated as outcasts and not acceptable, regardless of the reason, and to generate open hostility toward them.  They were to be viewed as pariahs who were causing trouble for everyone else—regardless of the reason they were not vaccinated.  As Biden explained:

> "**Many of us are frustrated** with the nearly 80 Million Americans who are still not vaccinated, even though the vaccine is safe, effective, and free….**This is a pandemic of the *unvaccinated*…**nearly 80 million Americans…have *failed* to get the shot.

> "The vast majority of Americans are doing the *right thing*.  [That nearly 80 million is a **25 percent minority**.]  That 25 percent **can cause a lot of damage—*and they are*.**

> "***The unvaccinated* overcrowd our hospitals,** are overrunning the emergency rooms, and intensive care units, l**eaving no room for someone with a heart attack, or [pancreatitis], or cancer….**

> "But what makes it i***ncredibly more frustrating*** is that we have the tools to combat COVID-19, and a distinct *minority* of Americans— supported by a distinct minority of elected officials—**are *keeping us from turning the corner….***

> "This is not about freedom or personal choice….

> "The Department of Labor is developing an emergency **rule to require all employers with 100 or more employees, that together employ**

**over 80 million workers, to ensure their workforces are fully vaccinated or show a negative test at least once a week.**

"The bottom, line:  *We're going to protect vaccinated workers from unvaccinated co-workers.*

"I will sign an executive order that will  now require all executive branch federal employees to be vaccinated—*all*.  And I've signed another executive order  that will require federal contractors to do the same….

"If you want to work with the federal government and do business with us, get vaccinated.  If you want to do business with the federal government, vaccinate your workforce….

"The Department of Labor will require employers with 100 or more workers to give those workers paid time off to get vaccinated…..

"My message to unvaccinated Americans is this:  What more is there to wait for?  What more do you need to see?...

"The vaccine has FDA approval.[10]

"We've been patient, but **our patience is wearing thin. And your refusal has cost all of us.** So please **do the right thing**.  But just don't take it from me; listen to the voices of unvaccinated Americans who are lying in hospital beds, taking their final breaths, saying, "**If only I had gotten vaccinated.**: "If only."

"**It's a tragedy.**

"For the vast majority to have gotten vaccinated, **I understand your anger at those who haven't gotten vaccinated.**

---

[10] This is actually misleading.  The vaccine available in the United States  at that time had not been FDA approved for anything other than Experimental Use.

*"For any parent, it **doesn't matter how low the risk** of any illness or accident is when it comes to your child or grandchild.  Trust me.  I know.---*

*"**Get your teenager vaccinated**….*

*"Any teacher or school official whose pay is withheld for doing the* **right thing***, we will have that pay restored by the federal government 100 percent.  I promise you I will have your back….*

*"Because of our vaccination program…we've had record job creation for a new administration, economic growth unmatched in 40 years.  **We cannot let the unvaccinated [un]do this progress—undo it, turn it back**."*[11]

See Exhibit H., H.1

70.     As directed by Gray, Plaintiff, on the very same day of this speech, September 9, 2021, submitted his request for a religious accommodation to Sharel Bend in Gray HR.  See Exhibit I, Platta Request for Religious Exemption and accompanying documents.

71.     Neither Gray HR nor any supervisor or other official contacted him to answer his questions, never contacted him to discuss his religious accommodation requests, or to try to interact with him to determine a way he could practice his religious beliefs and still remain employed.  No one even offered him weekly testing, which was actually a Biden mandate alternative to the Vaccine.

72.     Gray provided no interactive discussion with Mr. Platta as

---

[11] See Exhibit H, Biden September 9, 2021 Speech to the nation.

contemplated by discrimination law.

73.    Plaintiff knows of no one employed by Gray who was granted either an interactive discussion or a religious accommodation.

74.    Upon information and belief, and based on lawsuits and claims that have arisen across the country against Gray, it appears that Gray granted no one a religious accommodation request.

75.    Upon information and belief,  inspired by the pressure Biden inflicted on Gray and all other Americans and corporations who listened to his September 9, 2021 speech, Gray intentionally refused to grant Mr. Platta's religious accommodation request because Gray was hostile to his religious beliefs as interfering with the vast mandate demanded by Biden.

76.    Upon information and belief, Gray determined that neither religion nor any other objection would get in the way of Gray vaccinating all its employees, as Joe Biden was demanding—no matter how much exceptional talent was lost as a result of this determination.  The line in the sand was drawn:  Jab or no job.

77.    Gray was compelled by Joe Biden through his use of federal agencies like the CDC, FDA, HHS and OSHA, as well as his use of the media, to pressure vaccinations on everybody and to pressure large corporations to mandate COVID

vaccinations for their thousands of employees.

78.    Alternatively, upon information and belief, Gray worked in partnership with Biden to compel vaccination for as many employees as possible, by simultaneously denying as many religious or other accommodation requests as possible.  As the 5th Circuit described it, by his mandate, Biden attempted to "deputize" private employers to carry out his desire that everyone in the country be vaccinated—regardless, apparently, of how dangerous the vaccines were or whether the employees wanted them or not.

79.    Vaccination is a medical procedure.

80.    Mandating the Vaccine was mandating a medical procedure necessarily involving actual piercing of the skin.

81.    In the case of the COVID Vaccine, only *experimental* Vaccines were available in the United States when Joe Biden and Gray were mandating that all employees submit to the EUA Vaccines.  The Vaccine did not have full FDA approval or U.S. availability as inferred in Joe Biden's Speech (Exhibit H).

82.    A vaccine authorized only pursuant to an EUA requires that the recipients of the vaccine be given informed consent, including detail set forth in in 21 CFR 50.25

83.    Defendant did not obtain from its employees the required informed

consent, and did not provide them the information required by Informed Consent law.  Defendant sought to vaccinate everyone, as Joe Biden wanted, whether they wanted to be vaccinated or not, whether they knew of the VAERS risks or not, whether they had religious objections or medical objections or not.  See Exhibit H.

84.   Notwithstanding:

- the Vaccine's very short testing time;

- the government's knowledge that there were a great many serious adverse health consequences known by the FDA and CDC;

-  the records provided to the FDA/CDC by major suppliers of the Vax, including Pfizer, Inc. ("Pfizer");

- the many scary reports by Vaccine takers through the government V-Safe system;

- public access to the testimony of doctors, scientists, and undertakers worldwide publicly publishing warnings and data about the serious dangers  of the Vaccine; and

- the FDA's own publicly-displayed VAERS system of keeping track of adverse reactions,

the FDA, CDC, President Biden, mainstream media and others *heavily* marketed

the Vax as "safe and effective."

85.   Gray personally represented to its employees that it *knew* the mandated Vax was "safe and effective," even though Gray did not really know whether it was safe and effective or not, as it, apparently, did not do research or examine sufficient information to undertake the necessary due diligence to state such a conclusion.   Notwithstanding, it demanded upon penalty of termination, that every one of its employees submit to "the Jab."

86.   President of the United States Joseph Biden demanded in multiple ways that companies should order their employees to get vaccinated.[12] He first ordered that all Federal Employees must get vaccinated; he then ordered all Federal Contractors had to be vaccinated; and finally, he ordered all corporations with 100 or more employees that they must require their employees be vaccinated. [13]

87.   Defendant's leadership also, rather than merely parroting Biden's or the CDC or FDA misrepresentations about the Vaccine,   personally took on responsibility to represent its own knowledge of the "safety and efficacy" of the

---

[12] See, e.g., https://www.cnn.com/2021/07/29/politics/biden-pandemic-unvaccinated/index.html
[13] _ https://www.youtube.com/watch?v=ijZT9sp4Z3o.   See also
https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-
biden-on-fighting-the-COVID-19-pandemic-3/

Vaccine.  In emails sent to thousands of employees, Gray misrepresented  to employees that, "*We* KNOW the vaccine is safe and effective."   [Emphasis added.] Exhibit E.

88.   Although Biden attempted to issue a mandate that all employers of over 100 employees would be required via a new OSHA Emergency Temporary Standard ("ETS") to make all their employees get vaccinated, a lawsuit was brought by a diverse group of petitioners (including covered employers, States, religious groups, and individual citizens) against the proposed OSHA ETS rule and asked the court to issue a permanent injunction against it.

89.   The 5th Circuit Court of Appeals, recognizing that OSHA was attempting to exercise an extraordinary power, and that such extraordinary power should be delicately exercised, stayed the OSHA-attempted mandate, stating that:

> …the Mandate is a one-size-fits-all sledgehammer that makes hardly any attempt to account for the differences in workplaces (and workers) that have more than a little bearing on  workers'' varying degrees of susceptibility to the supposedly "grave danger" the Mandate purports to address."[14]

90.   Although the Gray Vaccine Mandate email of August 16, 2021

---

[14] Se Exhibit F.

purports to convey an intent to comply with applicable EEOC law and to grant appropriate legally-required accommodations, in fact, Gray implemented its Vaccine Mandate in the same way Biden and OSHA attempted to implement its ETS—like a sledge hammer, giving no attention to the individual religious or medical or other concerns of its employees and firing a multitude of very talented employees because of their religious objections to the Vaccine.

91.   Gray was proud of its high numbers of vaccinated employees and made a decision intentionally or negligently to fail or refuse to follow the interactive processes required by law to provide religious exemptions or accommodations to its Mandate.  Since Plaintiff's termination, Gray has claimed that "100% of its employees are Vaccinated"—clearly indicating that no accommodations were given, and those who could not take the Vaccine were terminated or left.

92.   Upon information and belief, Gray had no interest in engaging in the required interactive process to evaluate the religious or medical concerns of each individual employee requesting an accommodation and did not respond to inquiries from employees, including Mr. Platta, who were attempting to talk to Gray about an accommodation to save their jobs.

93.    While the Announcement of the Vaccine Policy  states  that it will

grant reasonable accommodations "where warranted," and Gray provided, if the employee requested it,  a form to fill out for those requesting an accommodation, upon information and belief, Gray Leadership was loathe to meet the legal requirements of an accommodation, decided, in accordance with Biden's and its joint interest in vaccinating as many people as possible,  it would not engage in interactive discussions with each employee.  Rather, a decision was made by Gray to just summarily terminate numerous employees, including Mr. Platta and others also among Gray's best talent. [15] [16]

94.     In connection with notice of the Vaccine mandate Gray planned to impose, Mr. Platta in a timely fashion provided a detailed, sincere religious objection, and completed fully the Religious Accommodation Form provided by Gray.  He explained in detail his Christian religious beliefs that prevented him from submitting to the Vaccine. See Exhibit I.

95.     Although Mr. Platta had many questions about the mandated Vaccine, and verbally and in writing sought to exchange information as part of the legally-required interactive discussion about the Vaccine mandate and his request for a religious accommodation, his questions were ignored.  See Emails  and texts from

---

[15] See, e.g.,   Exhibit L, Separation Notice

[16]  See Exhibit M, Newsweek article.

Mr. Platta attached as Exhibit J.

96.    Defendant failed and refused to have the legally-required interactive discussion with Mr. Platta despite his multiple attempts to have this conversation.

97.    Gray failed and refused to discuss with him the sincere and informative Request for Accommodation Mr. Platta submitted to Gray pursuant to its instructions.  See Exhibit I.

98.    Gray's failure and refusal to interact with Mr. Platta to discuss his request for a religious accommodation and to work out a way he could remain employed while still accommodating his religious beliefs was despite the fact that Gray *knew* it had this obligation.

99.    On the Gray Religious Accommodation Form ("RAF") provided to Mr. Platta, it plainly states:

> Upon receipt of your completed form, **Corporate <u>HR will contact you</u>** as soon as practicable **<u>to discuss your accommodation request, clarify your needs, and, if necessary, request and/or gather additional information from you. It is important that the Company and you engage in this interactive process.</u>** Please respond promptly to any communications you receive from Corporate HR relating to your request.

Exhibit I [Emphasis added].

100.   Despite the bolded language above and other representations from Gray that discussion would be forthcoming, no such discussion was forthcoming and never took place, despite Mr. Platta's efforts to have this interactive discussion

101.   Plaintiff's  extremely reasonable, well-reasoned and well-supported proposed accommodation would have caused zero cost or hardship to Gray and its employees.  See Exhibit I, Platta Request for Accommodation.

102.   Gray chose not to discuss or offer to Plaintiff even the weekly testing President Biden offered in his September 9, 2021 speech about Vaccine mandates.

103.   As can be seen on Mr. Platta's Request for Accommodation, Exhibit I, Mr. Platta details the religious reasons he cannot take the Vaccine.

104.   Gray never offered one alternative accommodation, and never ever inferred, much less, proved,  that Plaintiff's suggested accommodation or any other would cause an undue hardship to Gray.

105.   The accommodation Plaintiff suggested would have prevented any transmission of the COVID virus as well as or better than the Vax.

106.   Additionally, he would have been open to other reasonable accommodations Gray might have proposed, if they had had the interactive discussion contemplated by law and proposed any alternatives whatsoever.

107.   Even OSHA in its ETS offered an alternative to the Vax in the form of

testing, masking, and or social distancing.

108.    But Gray proposed no alternative to the Vax to Mr. Platta, and would not discuss it.

109.    Upon information and belief, other TV personalities at other employers were able to continue their work while remaining unvaccinated.

110.    But at Gray, instead of accommodating Plaintiff's religious beliefs, Defendant discriminated against him.  Defendant apparently did not like his religious beliefs or the fact that he engaged in protected activity by requesting an accommodation and requesting an interactive discussion.  In consequence, after 36 years of stellar service, and while in the middle of  a 3-year employment contract, Gray by a "Dear Gray Manager" email terminated Mr. Platta effective September 15, 2021.

## COUNT I
## BREACH OF CONTRACT

111. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

112. By terminating Plaintiff's three-year employment contract on September 15, 2021, Defendant breached its contract with Plaintiff.  See Exhibit A.

113. Defendant cited the reason for Plaintiff's termination was "failure to follow policy."

114. Plaintiff engaged in no violation of policy.

115. The sole reason Defendant terminated Plaintiff was because he requested a religious accommodation and requested an interactive discussion.

116. While Plaintiff would not abdicate his faith to take the demanded Jab, a reasonable accommodation was proposed, and with interactive discussion, a reasonable alternative could have been worked out.

117. Defendant breached Plaintiff's employment contract in bad faith and in violation of applicable law, as explained herein and as will be shown at the trial of this matter.

118. But for Plaintiff's refusal to abdicate his religious beliefs and his consequent request for accommodation, Plaintiff would still be employed.

119. Upon information and belief, if Defendant had engaged in the interactive discussion contemplated by law, the parties could have developed a satisfactory reasonable accommodation that would have enabled Plaintiff to do his job to Defendant's satisfaction and Defendant's breach of contract could have

been avoided.

120. Defendant failed to take reasonable action to avoid breaching its contract with Plaintiff.

121. Defendant has intentionally and willingly mischaracterized Plaintiff's work conduct (as he violated no legitimate policy), impaired his reputation, and subjected him to embarrassment, ridicule, monetary damages, reduced standing in the community, and put him a false light. Defendant thrust these damages on Plaintiff and destroyed his life-long career merely to escape the requirements of its contract to keep Plaintiff employed for three years.

122. Not only did Defendant breach its contract with Plaintiff (Exhibit A) and thereby release Plaintiff from his obligations of exclusivity and noncompetition, but Defendant falsely insisted to Plaintiff and others that his prior obligations of exclusivity and noncompetition obligations were still in effect, despite Defendant's breach and termination of the contract with two years left to go.

123. Upon information and belief, Defendant made this unfair and unlawful characterization to potential employers to further ensure that Plaintiff would not only not get unemployment compensation, but would also not be able

to continue working in the only industry he knew.

124. Defendant intentionally advised the Department of Labor that Plaintiff was fired for "violating company policy" so that he could not even get unemployment compensation after unlawfully being cast out of his job of 36 years at the age of 62.

125. Plaintiff is entitled to recover all damages permitted by law for Defendants unlawful and abusive conduct described herein, including all payments required by the three-year  contract, as well as other damages for Defendant's bad faith, including the attorney fees and costs Defendant has forced Plaintiff to incur to bring this matter before this court.

## COUNT II
## VIOLATION OF TITLE VII

126. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

127. Title VII precludes Defendant from discriminating or retaliating against Plaintiff on the basis of his religious beliefs or related protected activity. So does the Georgia Constitution, Article 1.  So does the U.S. Constitution, First Amendment.

128. Title VII specifically requires Defendant to provide Plaintiff a reasonable accommodation if the tenets of Plaintiff's religion conflict with Defendant's policy, as long as it does not cause Defendant undue hardship.

129. Title VII contemplates and requires that Defendant and Plaintiff engage in an interactive discussion in order to develop an accommodation that will allow Plaintiff to continue his employment in a way that does not conflict with his religious beliefs.

130. Despite knowing the law (as evidenced by its religious discrimination form, Exhibit I), Defendant failed and refused to engage in the interactive discussion contemplated by law or discuss in any way Plaintiff's request for a religious accommodation.

131. Title VII prohibits Defendant from discriminating against Plaintiff, retaliating against Plaintiff because of his religion or protected activity, or by creating a hostile work environment because of his religion.

132. Defendant  failed to suggest or offer Plaintiff any accommodation whatsoever to his religious beliefs.

133. Plaintiff's proposed accommodation (as reflected in Exhibit I) would

have caused Defendant no undue hardship.

134. Even simply continuing the masking, social distancing and/or testing that was used successfully by Defendant prior to the development of the Vax could have been offered to Plaintiff, and would have been accepted, but Defendant offered Plaintiff nothing at all—notwithstanding Plaintiff's unexpired three-year contract or 36 years of employment.[17]

135. Upon information and belief, Defendant discriminated and retaliated against Plaintiff because he asked for an interactive discussion so that an acceptable accommodation could be developed.  In consequence for asking, he was ignored and then terminated from his 36-year career.

136. Plaintiff's requests and questions were activities protected conduct under Title VII, i.e.,  "protected conduct."

137. Defendant would suffer no undue hardship from accommodating Plaintiff either in the way Plaintiff requested, or to simply continue the safety measures Defendant had used for a year and a half before it mandated the Vaccine, or by offering the alternative in the Biden speech: weekly testing.

---

[17] See EEOC, <u>What You Should Know about COVID-19 and the ADA, the Rehabilitation Act, and Other EEOC Laws</u>, updated July 12, 2022.  See also, <u>*www.eeoc.gov/coronavirus*</u>.

138. Defendant violated Title VII by failing and refusing to have an interactive discussion to develop with Plaintiff a suitable accommodation, by failing to offer him any accommodation whatsoever, by ignoring his questions, by failing to comply with its representations on its Request for Accommodation form regarding the required-by-law interactive discussion, and by showing disrespect, indifference and/or hostility to Plaintiff's faith by its actions.  All these things created a hostile work environment for Plaintiff and other employees of Christian faith.  Defendant's actions and inactions were topped off by Defendant labeling Plaintiff's efforts to comply with Defendant's and Title VII rules as "violation of policy." Finally, Defendant abusively and without legal basis obliterated Plaintiff's 36-year career in clear breach of his three-year contract with a disturbingly impersonal "Dear Gray Manager" email.

139. By asserting Defendant fired Plaintiff because he was "violating a policy," Defendant embarrassed and defamed Plaintiff, cast him in a false light, interfered with his clear entitlement to government unemployment and other benefits, and caused him extreme mental anguish, among other damages.

140. Plaintiff is entitled to all damages he has suffered as a result of Defendant's actions, including without limitation, front pay, back pay, compensatory

damages, interest, punitive damages and attorney fees in amounts to be demonstrated at trial.

## COUNT III
## VIOLATION OF THE AMERCANS WITH DISABILITIES ACT, AS AMENDED ("ADAAA")

141. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

142. The ADAAA was designed by Congress to protect not only the disabled, but also those who are *regarded* as disabled—even if they are not actually disabled.   See 42 USD §1210(1)(c).

143. Because he was unvaccinated, Defendant viewed Plaintiff as disabled—unable to do his job.

144. In fact, Plaintiff was perfectly able and willing to do his job with a reasonable accommodation, but Defendant refused to provide one.

145. In terminating him for not abdicating his faith and for remaining unvaccinated, Defendant discriminated against him because of his perceived disability.

146. Plaintiff is entitled to all the damages available under the ADAAA,

as will be proved at trial.

## COUNT IV
## VIOLATION OF SECTION 1983
## (DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW)

147.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

148.   Under color of law, Defendant deprived Plaintiff of a right secured by the Constitution, including the right to the free exercise of religion guaranteed Plaintiff by the U.S. Constitution First Amendment, as well as the Right to Privacy and Bodily Integrity, guaranteed by the 14th Amendment Due Process Clause. The Georgia Constitution, Article 1 also guarantees freedom of religion.

149.   The forcible injection of medication in violation of Plaintiff's religion, and into any nonconsenting person's body, represents a substantial interference with that person's liberty, as well as his privacy, and his right to bodily integrity.

150.   As the 5th Circuit in the BST v OSHA case, *supra* (Exhibit B)*,* explained:

> "The Mandate threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s). For the individual petitioners, the loss of

constitutional freedoms "for even minimal periods of time . . . unquestionably constitutes irreparable injury." <u>Elrod v. Burns,</u> 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

151.   The <u>BST</u> court explained that Biden, via an ETS issued by OSHA requiring corporations with 100 + employees  to mandate those employees to be vaccinated,  sought to "deputize" private companies to carry on his Vax Mandate plan developed via OSHA. See <u>BST v. OSHA,</u> 17 F.4th 604 (5th Cir. 2021). See Exhibit F highlighted section[18].

152.   The 5th Circuit explained in <u>BST</u> that the Mandate sought had compliance costs for the plaintiff companies that would never be recovered if the Mandate was not stayed while the OSHA ETS challenge made its way through the court system.

153.   However, there are compliance costs for both parties to comply with Biden's OSHA mandate.   Because Defendant Gray went forward with the Biden/Government mandate inculcated into large corporations over months even prior to the September 29, 2021 Biden Speech, *Plaintiff* has suffered costs that will never fully be recovered.  Defendant was "deputized" by Biden and the

---

[18] "[T]he Mandate imposes a financial burden upon [the plaintiff corporations] by deputizing their participation in OSHA's regulatory scheme."

government to act as an arm for its Vaccine Mandate wishes; Plaintiff and others who wish to remain unvaccinated for religious, medical or other reasons are the real losers with regard to the Mandate.  Hardly anything compares to the loss suffered by mandated employees who may have lost their very lives with their Mandate compliance.

154.   This lawsuit is about the very real and overwhelming loss for those like Plaintiff who could not abdicate their religious beliefs and take the Vax, and therefore lost their livelihood along with, in Plaintiff's case, decades of stellar employment and a flourishing career he spent his entire 63 years of life building.

155.   Because Defendant complied with, and became, the arm of Biden and the government following their multiple and lengthy urgings and demands for mass vaccination,  Plaintiff has lost his entire career—the one he spent year after year building with all his talent, energy, and devotion for 36 years.  Practically his entire working life.  This is a devasting loss to Plaintiff and his harm is irreparable.

156.   Plaintiff asks this court, however, to require Defendant to repay, to the extent even possible,  the "compliance costs" he suffered when Defendant complied with Biden's mandate and implemented the mandate against its own employees in violation of multiple Constitutional rights and other laws.  As the

BST court explained[19]:

> The public interest is …served by maintaining our constitutional structure and ***maintaining the liberty of individuals to make intensely personal decisions according to their own convictions--even, or perhaps particularly, when those decisions frustrate government officials' s own.***

157.   It is everyone's right to choose his or her own medical procedure.

158.   As in the multiple cases establishing a woman's right to choose an abortion,[20] it is everyone's right to choose a medical procedure." It is abhorrent and an abrogation of the rights Americans have all enjoyed as U.S. citizens for decades now to have an employer, the government or anyone else—not even a doctor—**mandate** a medical procedure. Gray has no qualifications, nor any right, to do so.

---

[19] Ultimately, the Mandate via OSHA was struck down the U.S. Supreme Court. See Exhibit G. Note this paragraph explains the plaintiff corporations' concerns in **BST**.  Gray apparently did not share these concerns, as it eagerly enforced the mandate, even before it was announced in the Biden Speech, without regard to the employee costs.

[20] While the Roe v. Wade abortion case was recently struck down by the US Supreme Court, that case involved not just the life and rights of the mother, but also the life and rights of the baby.  A woman still has the right to choose, or decline, a medical procedure affecting only her life. While for religious reasons, Mr. Platta disagrees that all have a right to an abortion regardless of circumstances, it nonetheless was essentially the law of the land in the U.S before the recent US Supreme Court decision. This law in the context of the Vaccine mandate stands for the right to choose what happens to one's own body, and that an individual has a right to choose to have a medical procedure or not. Plaintiff is unaware of any law that has struck down this most basic liberty concept.

159.   President Biden, using as his arm the mainstream media, and attempting to use OSHA as another arm, engaged in a lengthy and intense tirade of demands and executive orders that infiltrated into the homes of virtually every US citizen with access to television and other media night and day, virtually without ceasing, in an effort to instill fear and compel compliance with his demands that *everyone* get the Vaccine.  See, e.g., Exhibit H.1.

160.   He made every effort to use all his influence and power to coerce everyone, including especially corporate employers with hiring and firing power over their employees,  to force thousands of employees to get the Vaccine.

161.   Through the constant use of the media, through use of government agencies and actors, and through his September 9, 2021 speech vilifying the unvaccinated, Biden and his government agents compelled and "deputized" Defendant with power to demand all its employees be vaccinated and to disregard the pleas of those with religious or medical objections--to not even talk with them.

162.   Plaintiff's religious rights, rights of privacy, right to informed consent, and right to maintain his own physical and spiritual integrity conveyed by both US Constitutional and Georgia law were blasted away by Biden's persistent, coercive Vaccine mandate pressure.

163.  By joining in the defined purpose set forth by Biden and other government agencies, and also being compelled by them, to get "all" employees vaccinated, Gray, in their en masse termination of unvaccinated Gray employees, including Plaintiff, acted under color of state law to deprive Plaintiff (and many of his colleagues) of their rights and freedom to adhere to the tenets of their religious faith and to preserve the integrity of their physical and spiritual bodies.

164.  As the 5th Circuit stated, Biden's Vaccine mandate purports to "affect every member of society in the profoundest of ways."

165.  The mandate, as instituted at Gray, indeed affected every Gray employee in the profoundest of ways.  Gray lost many extremely talented employees due to this mandate. Many employees lost their jobs and only way they had to feed themselves and their families.  Plaintiff lost everything he had worked for his whole life.

166.  Rights to freedom to practice religion, freedom to choose or decline a medical procedure, and freedom to preserve one's physical and spiritual integrity, as well as one's right to privacy are all guaranteed by the U.S. Constitution, First and Fourteenth Amendments, as well as the Georgia Constitution, First Amendment, and common and federal law preserving the

right to informed consent when participating (or refusing to participate) in a medical experiment.

167.  This was the law even prior to the development of the Law of Informed Consent, starting in 1914 when Judge (later Supreme Court Justice) Benjamin Cardozo validated the concept of voluntary consent in <u>Schloendorff v. Society of New York Hosp.</u>,105 N.E. 92, 93 (N.Y. 1914) when he deemed any medical intervention without Informed Consent an unlawful **trespass**:

> "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an **assault** for which he is liable in damages."

168.  By instituting the Vaccine mandate and threatening to end their careers and leave them destitute, Defendant has likewise directed such an assault on the Gray unvaccinated with religious objections, including Plaintiff.

169.  Worse, it has done so under color of state law.[21]

170.  Defendant has violated Plaintiff's rights under §1983 and Plaintiff is entitled to all his damages under applicable law in amounts demonstrated at trial.

---

[21] Although the mandate as developed via the OSHA ETS was ultimately struck down by the U.S. Supreme Court, at the time Plaintiff was fired, it had the full force of the Biden demands and executive orders, along with all the pressure of the media and the FDA, CDC and other government agencies promoting the vaccine.  See Exhibit G., H., and H.1,

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

171.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

172.   In terminating Plaintiff's employment contract, after 36 years of stellar employment, for respectfully expressing his religious beliefs and asking for a religious accommodation, Defendant engaged in intentional or reckless conduct.

173.   Defendant and Plaintiff had unequal bargaining power and by treating Plaintiff's religious beliefs with contempt, Plaintiff intentionally inflicted emotional distress on Plaintiff.

174.   Defendant knew failing and refusing to respect or discuss Plaintiff's religious beliefs, failing and refusing to accommodate him as required by law, and requiring him to abdicate his religious beliefs if he wanted to remain employed, would cause Plaintiff enormous emotional distress.

175.   Terminating Plaintiff for expressing his religious beliefs and requesting an accommodation, and then characterizing this conduct as "violating policy"-- so that this suddenly unemployed 36-year Gray veteran could not even receive unemployment compensation--was extreme and outrageous.

176.   Insisting that Plaintiff was still bound by the noncompete provisions

of the contract knowingly breached by Defendant in order to obliterate Plaintiff's career and so that Plaintiff could not get a job at any company where he could exercise the only job skills he knew from 36 years of employment with Defendant was extreme and outrageous.

177.   Upon information and belief, upon hearing Biden's speech against the unvaccinated on September 9, 2021, Defendant, on behalf of itself, Biden, the government and the country wanted to punish Plaintiff for being unvaccinated and being unwilling to get vaccinated.  Plaintiff's religious beliefs did not matter. Defendant used Plaintiff's termination and treatment to not only punish Plaintiff for his religious refusal but to also frighten and deter others who were considering remaining unvaccinated or who had religious objections to the Vaccine mandate.

178.   Defendant's extreme and outrageous conduct naturally, foreseeably, and directly caused Plaintiff extreme and severe emotional distress, mental anguish, shock, humiliation, despair, embarrassment, depression, inconvenience, loss of income and benefits (past and future), humiliation, other indignities and other mental and emotional damages.

179.   Defendant's conduct is of a type and nature that ought not be permitted in a civilized society, and certainly not a society governed by laws like the U.S. Constitution and other laws governing fairness and civility and holding

46

inviolate individual rights to life, liberty, the pursuit of happiness—and freedom of religion and freedom to determine what medical procedures will be allowed to pierce and invade his body.

180.   Defendant is liable for all damages associated with this tort, including punitive and other damages, in an amount to be proved at trial.

### COUNT VI
### PRACTICING MEDICINE WITHOUT A LICENSE AND FAILURE TO OBTAIN INFORMED CONSENT

181.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

182.   Getting the Vaccine is a medical procedure.  It involves a needle piercing the skin and irreversibly shooting into the body a liquid of experimental character, with many medical hazards and deaths publicly associated with it.  This Vaccine directive was made without any consideration at all of Plaintiff's or any employee's medical status, religious status, or concerns of any kind.

183.   Defendant's leadership, not being medical doctors, health practitioners or otherwise having license to order or direct medical procedures, and not even having the power of the Secretary of Health and Human Services, as described 21 U.S. Code § 360bbb-3,  have and had no right or standing to demand that its approximately 8,000 employees undergo such a medical procedure,

especially without the informed consent required by 21 U.S.Code § 360bbb-3(c) .

184.   Mandating a medical Vaccine procedure violates the Constitutional rights to individual privacy and bodily integrity as explained herein, and also violates laws requiring medical procedures to be ordered only by licensed medical personnel and only with the patient employee's informed consent.

185.   Authorizing the Vaccine under an EUA essentially allows an experiment on the entire U.S. population and anyone else to whom it is provided.

186.   Mandating that a person participate in such an experiment, even when it conflicts with his religious beliefs, violates the doctrine of informed consent under both federal law and state law.

187.   The government, in issuing 21 CFR Part 50.25, has made clear that for experimental medical products like the COVID Vaccine, much information must be provided to the person receiving the experimental medical product or procedure, and informed consent must be obtained.  Basic elements of informed consent required under federal law, among other things, include:

***2.      **A description of any reasonably foreseeable risks or discomforts to the subject**….This was not done.  Rather, ignoring the cold reality of published VAERS information, the "safe and effective" mantra was repeated often by

Defendant and was even made its own.  The  August 16, 2021

Vaccine Policy Announcement declared that "WE *know* the vaccine is

safe and effective." [Emphasis added.]  ***

> **4.     An EUA cannot be made unless there are no other alternative medicines. [22] ***

….        **8**.     **A statement that participation is <u>voluntary</u>, that**

**<u>refusal to participate will involve no penalty or loss of benefits</u> to**

**which the subject is otherwise entitled**, and that **the subject may**

**discontinue participation at any time without penalty or loss of**

**benefits to which the subject is otherwise entitled.**   The very nature

of a *mandate* eliminates voluntary participation.  Defendant made

clear that the Vaccine was not an option--taking the Vaccine was an

absolute requirement of everyone's job, and loss of employment

would result for failure to comply.  Indeed, Plaintiff and others at

Gray lost everything they had worked for all their lives.

188.   Upon information and belief, in mandating the experimental Vaccine,

Defendant obtained from no one, including Plaintiff, the required informed consent

for the experimental Vaccine.

189.   Informed consent to a medical procedure has long been required of

---

[22] See 21 USC 360bbb3(e)(1)(A)(ii)(III); FDA.gov, EUA Medical Products, Criteria for Issuance; No Alternatives.

those participating in a medical process in Georgia.

190.   Since Defendant, through its leadership, in mandating a  medical procedure for thousands of employees, has attempted to step into the shoes of the government[23] and/or a health care practitioner,  it is subject to the state law regarding licensure and informed consent.

191.   Upon information and belief, Defendant and its leadership have no medical license and thus, by mandating a medical procedure, Defendant is practicing medicine without a license.

192.   Under Georgia law, the intended recipient of a medical service has the absolute right to determine whether or not he will accept or decline the service. Even the health care provider—i.e., the person directing or actually performing the medical service—is not allowed to make a decision for the intended recipient of the service without the recipient's consent—*even if the health care provider thinks the service is medically necessary and will save his life.*[24]

193.   The Georgia Supreme Court has noted:

"The General Assembly has long recognized the right of the individual to control all aspects of his or her personal care and medical treatment,

---

[23] The Fifth Circuit referred to this procedure as the large private employer  being "deputized." See BST v OSHA, Exhibit  at  F (highlighted).

[24] See <u>Doctors Hospital of Augusta, LLC v. Alicea</u>, 299 Ga. 315, 788 S.E.2d 392 (Ga. 2016).

including the right to insist upon medical treatment, decline medical treatment, or direct that medical treatment be withdrawn. Ga. L. 2007, p. 133, § 1 (a)."

See Doctors Hospital of Augusta, LLC v. Alicea, 299 Ga 315, 788 S.E.2d 392 (Ga. 2016).

194.   By mandating the Vaccine, Defendant has attempted to take away this right long recognized by the General Assembly and has done so by destroying Plaintiff's lengthy career and breaching his contract.

195.   Defendant is liable for all Plaintiff's damages for this intrusion and denial of his right to choose what medical procedures will be permitted on his own body.

## COUNT VII
## NEGLIGENCE

196.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

197.   Especially given that Defendant had approximately 8,000 employees, Defendant had an extremely important duty to thoroughly research independently whether or not the Vaccine it was contemplating injecting into 8,000 or so employees was indeed "safe and effective."

198.   Upon information and belief, Defendant breached this duty and failed

to adequately research the adverse effects and other risks of the Vaccine before insisting it be shot into 8,000 or so human beings.

199.   Part of the Christian religion involves the belief that one's body is the Temple of God, and a believer is not to desecrate or inflict harm on the Temple of God.

200.   Plaintiff, in his request for a religious accommodation, Exhibit I, provided specific information regarding not only the Vaccine's development from aborted fetus cell lines, but also certain of the physical hazards that had been discovered with regard to the Vaccine.

201.   Upon information and belief, although Defendant had this information handed to it by Plaintiff, and possibly others, it did not bother to investigate the hazards of the Vaccine prior to or after mandating that 8,000 or so  employees inject the experimental substance into their bodies or face termination of their career.

202.   Upon information and belief, notwithstanding this lack of adequate investigation, Defendant represented to 8,000 or so employees that it "knew" the Vaccine was "safe and effective," enticing some to rely on the apparent expertise Defendant had in determining the safety and effectiveness of the Vaccine.  Surely, Defendant would not force on its 8,000 employees a Vaccine that could be, or

worse, was highly likely to be, hazardous to their health.

203.   Defendant's negligence in mandating the Vaccine leaves it responsible for any injuries that occur to its employees.

204.   Defendant's negligence and failure to:

- review information provided by Plaintiff;

- have an interactive discussion with Plaintiff regarding his religious issues and how they could be accommodated;

- seek counsel regarding its employees individual rights affected by its mandate and its duties to provide accurate information and to not subject its employees to undue hazards by negligent misrepresentation; and

- other negligence, resulted in its creation of the mandate and ultimately its refusal to grant Plaintiff an accommodation as required by law.

205.   Had Defendant done adequate research in the first place, given that relevant information was publicly available at the time mandate decisions were being made, upon information and belief, it would not have issued the mandate and thereby caused enormous harm to Plaintiff and others terminated, or injured, because of it.

206.   Defendant's negligence, through that of its individual leadership, has caused Plaintiff significant damage for which he is entitled to recover in full, as

will be demonstrated at trial.

**WHEREFORE,** Plaintiff demands a Jury Trial and respectfully urged the court to grant the following relief:

(a) Enter judgment on all counts in favor of Plaintiff and against Defendant;

(b) Award contract damages, front pay, back pay, compensatory damages (pecuniary and non-pecuniary damages)-including damages for all mental anguish and suffering caused by Defendant) and interest as provided by law in an amount to be determined by the jury;

(c) Award punitive damages in an amount sufficient to punish Defendant for its extensive violations of Plaintiff's rights and damages it has caused him, and to ensure this type of conduct ceases and will not occur again;

(d)  Award all reasonable attorney fees and costs Plaintiff has had to incur as a result of Defendant's conduct and violations of law, including without limitation all the fees and costs related to this action;

(e)   Award any and all additional relief this court believes is just and proper.

Respectfully submitted this 17th  day of January 2023.


HIPES LAW LLC


*/s/ Jeanne Bynum Hipes*
Jeanne Bynum Hipes
Ga. Bar No. 100575
Counsel for Plaintiff


Hipes Law LLC
2475 Northwinds Parkway
Suite 200
Alpharetta, GA  30009
PH:  678-867-7006
FAX:  770/783-5010
EMAIL:  counsel@hipeslaw.com

**EXHIBITS TO COMPLAINT**
**Platta v Gray Media Group, Inc.**

A.    Platta Employment Contract

B.    EEOC Charge, Narrative and Exhibits

C.    EEOC Right to Sue

D.    VAERS Analysis

E.    Gray August 16, 2021 Vaccination Mandate Policy Announcement

F.    <u>BST Holdings et al v. OSHA</u> 5th Circuit Opinion

G.    <u>Federation of Independent Business v. Dept. of Labor</u> -US Supreme Court Opinion

H.    Biden Speech re the Unvaccinated Sept. 9, 2021

      H.1 – Biden Fact Sheet

I.    Platta  Religious Accommodation Request and documents submitted with same

J.    Communications from Platta to Gray Officials

      J-1 through 14.  See attached Index of Platta-Gray Communications.

      T-1 through 17 Texts from September 14, 2021.

K.    Gray Impersonal Denial of Religious Accommodation Request Sept 13, 2021

L.    Separation Notice

M.    Newsweek, These Media Personalities Have Stepped Away From Their Jobs Over Vaccine Mandates Oct 2021

**EXHIBIT J**
**Index of Platta-Gray Communications**

1. June 22, 2021    Gray emails Team re Covid benefits being reduced since vaccinations are widely available and "have demonstrated safety and efficacy," so temporary PTO and other benefits were ended.

2. July 27, 2021    Gray emails Gray Team re "We are pleased to share that the majority of Gray employees, and virtually your entire senior leadership at stations, etc., are fully vaccinated, but employees against adding new positive cases. "Everyone dying from COVID 19 today has not been vaccinated."

3. August 6, 2021  Gray emails Ladies and Gentlemen that Gray has strongly encouraged everyone to get vaccinated.  A small number of Gray vaccinated employees are having "breakthrough" infections, but have milder symptoms than the unvaccinated. "We know that the approved COVID19 vaccines are extremely effective in preventing serious illness and reducing the spread of the coronavirus.

4. August 16, 2021    **Gray announces important new Vaccine Mandate policy.**

      Vaccines are now mandated "UNANIMOUSLY" BY Senior Leadership.  Vaccines must be done by September 15th for managers, and October 1st for everyone else, **as a condition of employment**.  "We will grant reasonable accommodations where warranted."  Non-exempt employees will be paid   for their time to get the Vax.

57

5.  August 25. 2021  GM Holly Steuart writes to the unvaccinated saying let her know plans to get vaccinated or not, reminging them that she cannot grant an accommodation and to send request to Sharel Bend.  Reminds of Sept. 15th and Oct 1st deadlines and that Employees will not have jobs if not vaccinated by deadline.

6.  August 25, 2021  Platta emails Sharel Bend requesting to speak with her regarding what is going on.

7.  August 25, 2021  Platta receives "**Automatic reply:  Mandate & exemptions**." from Sharel Bend: Your message wil be answered in the order it was received.

8.  August 26, 2021  Sharel Bend emails Platta she is tied up for next few days but will be happy to answer any questions via email.

9.  September 3, 2021  Platta request religious exemption form from Sharel Bend.

10. September 6, 2021 Sharel Bend forwards Platta religious accommodation request for and asks for return by *Sept 21st*.  "We will review to determine if a reasonable accommodation can be met." **[No mention of *discussion* to determine if reasonable accommodation can be determined.]**

September 9, 2021 Platta forwards to Sharel Bend his completed religious accommodation form.

11. September 11, 2021  Gray HR writes "Dear Gray Supervisor" saying no accommodation is possible because job "requires close contact with other  individuals."  Repeats that no vaccination means "not qualified: to remain employed.

12. September 12, 2021  Platta forwards to GM Holly Steuart Sept 11th Dear Gray Supervisor email denying accommodation  saying "You need to know."

September 13, 2021  Platta writes Holly Steuart saying he is in the station c c c and 11:30 is perfect [to meet with her]

13. September 13, 2021  Platta writes Sharel Bend with numerous  questions re Vaccine mandate and coverage for adverse reactions to the Vaccine, what would be listed as cause for termination if he does not take Vaccine, what about contract, severance, his 36 years of employment, unemployment insurance, health insurance—Time is of the essence due to need for informed consent.

    **No response to this email.**

14. **October 13-14, 2021  Platta writes Holly Steuart re he has to make a living asking if high school play by play work would violate non-compete.**

    **Holly Steuart consults Legal department and they conclude, yes, "high school play-by-play would violate the non-compete."**