# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DAVID PLATTA,

        Plaintiff,

v.

GRAY MEDIA GROUP, INC.,

        Defendant.

CIVIL ACTION
NO. 1:23-cv-00236-VMC-JKL

## DEFENDANT GRAY MEDIA GROUP, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## PARTIAL MOTION TO DISMISS PLAINTIFF'S ORIGINAL
## COMPLAINT

Defendant Gray Media Group, Inc. ("Defendant" or "Gray"), by and through

its undersigned counsel, file this Memorandum of Law in Support of its Partial

Motion to Dismiss Plaintiff's Original Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).

## I.  INTRODUCTION

Although Plaintiff's Original Complaint ("Complaint") is extremely long and

reads more like a manifesto against vaccines than a civil complaint, it is clear that –

at base – this is a case about whether Plaintiff was denied an accommodation based

upon his religious beliefs and/or whether the termination of Plaintiff's employment

breached his contract.  Notwithstanding the very narrow set of facts at issue,

Plaintiff's Complaint asserts seven claims against Defendant: (1) Breach of Contract, (2) Violation of Title VII, (3) Violation of the Americans with Disabilities Act ("ADA"), (4) Violation of Section 1983 (Deprivation of Rights under Color of State Law), (5) Intentional Infliction of Emotional Distress, (6) Practicing Medicine Without a License and Failure to Obtain Informed Consent, and (7) Negligence. As will be discussed in detail below, Plaintiff's Complaint fails to state a claim upon which relief can be granted for his claims for five of his seven claims: (1) violation of the Americans with Disabilities Act ("ADA"), (2) violation of Section 1983, (3) intentional infliction of emotional distress, (4) practicing medicine without a license and failure to obtain informed consent, and (5) negligence.

## II.     PROCEDURAL HISTORY & FACTUAL BACKGROUND

On November 22, 2021, Plaintiff filed a charge of discrimination ("Charge") with the Equal Employment Opportunity Commission (the "EEOC") against Gray. Plaintiff's Charge claims discrimination on the basis of his religion and retaliation in violation of Title VII (*see* Ex. A)[1]. Specifically, in Plaintiff's Charge, he checked

---

[1] This Court may consider Plaintiff's Charge, without converting this Partial Motion to Dismiss into a motion for summary judgment, because Plaintiff's Complaint refers to his Charge and the Charge is central to his claims. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted); *accord*, *5th Bedford Pines Apartments, Ltd. v. Brandon*, 262 F. Supp.2d 1369, 1375

the boxes marked "RELIGION" and "RETALIATION". (*See* Ex. A). In the "body"

of his Charge, he stated:

> In Violation of Title VII of the Civil Rights Act of 1964…[Defendant] has
> failed and refused to accommodate Mr. Platta's sincerely held religious
> beliefs, and has disscriminated [sic] and retaliated against him by terminating
> him after 36 years of loyal, stellar service to Gray TV…

Plaintiff's Charge alleges that the discrimination took place from August 2021

until September 15, 2021. Further, the Charge makes clear that Plaintiff alleges he

sought an accommodation based upon his religion from Gray and that Gray denied

this request.[2] *Id*. Thereafter, on or about October 17, 2022, the EEOC issued a notice

of right to sue related to Plaintiff's Charge. (*See* Compl. ¶ 12.)

On January 17, 2023, Plaintiff filed his Complaint asserting seven claims. (*See*

Compl. ¶¶ 111-206.) To support his claims, Plaintiff attached sixteen exhibits to his

original Complaint, including a study about COVID-19 published in 2021, a written

copy of President Biden's speech related to the COVID-19 pandemic from 2021,

and a copy of the Biden Administration's Fact Sheet related to two major vaccination

---

(N.D. Ga. 2003); *Sturm v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356, 1366 (N.D.
Ga. 2000) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999)).
[2] Plaintiff's lengthy attachment to his Charge also references disability
discrimination in a conclusory way, but does not provide facts supporting that claim
such as a claim that he sought any accommodation based upon any alleged disability.
(*See* Ex. A.)

policies. (*See* Compl. Exs. D, H, and H-1.)  Plaintiff's Complaint, like his Charge, makes clear that Plaintiff alleges he sought an accommodation from Gray based upon his religious beliefs, was denied an accommodation, and that his employment was thereafter termination.  (*See* Ex. A.)

## III. ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of any action that fails to state a claim for which relief can be granted.  While the Court must draw all reasonable inferences in the light most favorable to Plaintiff, the "United States Supreme Court has recently dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'".  *See Maxwell v. Inner Harbour, LTD.*, No. 1:08–CV–2925–RWS, 2009 WL 1045478 at * 1 (N.D. Ga. Apr. 20, 2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007)) (other citations omitted).  That standard has now been replaced with the "plausibility standard" that requires factual allegations "raise the right to relief above the speculative level." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotations and citations omitted).

**B. Plaintiff's Claim against Gray Under the ADA Should Be Dismissed.**

Count III of Plaintiff's Complaint generally alleges that "Defendant discriminated against him because of his perceived disability." (Compl. ¶ 145.) However, Plaintiff did not allege facts that can plausibly support a claim for disability discrimination under the ADA.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability". 42 U.S.C. § 12112(a). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." *Couts v. Beaulieu Grp., LLC*, 288 F.Supp. 2d 1292, 1303 (N.D. Ga. 2003). The ADA defines "disability" as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Plaintiff does not appear to allege that he has an actual disability; rather, he alleges that "Defendant viewed Plaintiff as disabled – unable to do his job". (Compl. ¶ 142.) Construing these allegations in Plaintiff's favor, it appears Plaintiff alleges

he was regarded as disabled. Under the statute, an individual meets the requirement of "being regarded as" having a disability if the individual establishes that he has been subjected to an action prohibited under the ADA because of an <u>actual or perceived physical or mental impairment</u> whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A) (emphasis added).

Plaintiff has not alleged facts that could plausibly demonstrate that he is regarded as disabled. First, though Plaintiff appears to assert that the definition of "disabled" is "unable to do his job" (Compl. ¶ 143), that is not the definition of the term under the ADA. 42 U.S.C. § 12102(1). Further, there are no allegations that demonstrate a plausible basis to conclude that Gray regarded Plaintiff as having a physical or mental impairment. Federal courts have repeatedly concluded that an employee cannot be "regarded" as having a physical or mental impairment based on his or her vaccination status. *See Linne v. Alameda Health Sys.*, No. 22-cv-04981-RS, 2023 WL 375687 at *2-3 (N.D. Cal. Jan. 24, 2023) (determining an employee who refused to be vaccinated and refused twice-weekly testing was not "regarded" as disabled because COVID-19 is not a disability under the ADA, and granting defendant's motion to dismiss); *see also, Jorgenson v. Conduent Transp. Sols., Inc.*, No. SAG-22-01648, 2023 WL 1472022 at *4 (D. Md. Feb. 2, 2023) ("[Defendant's]

decision to protect its workplace by requiring its employees to attest to their vaccination status…does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); *Leggo v. M.C. Dean, Inc.*, No. 1:22-cv-374 (LMB/IDD), 2023 WL 1822383 at *4 (E.D. Va. Feb. 7, 2023) ("Plaintiff refused to disclose his vaccination status, and [Defendant's] resulting treatment of him as unvaccinated does not create a plausible inference that [Defendant] perceived him as having an 'impairment' or disability of any kind"). As the Western District of North Carolina recently stated under very similar circumstances, "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by [Plaintiff] that, while [his] to make in this context, cannot be considered an impairment under the ADA." *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649 at *5 (W.D.N.C. Aug. 17, 2022) (emphasis in the original) (granting defendant's motion to dismiss plaintiff's religious discrimination claim).

Further, while Plaintiff alleges that he "was perfectly able and willing to do his job with a reasonable accommodation, but Defendant refused to provide one", Plaintiff did not (and cannot) allege that he sought an accommodation based on an alleged disability in the first place or what accommodation was, or would be,

requested.[3] (Compl. ¶ 144). The only other facts Plaintiff alleges based on disability is likewise conclusory and insufficient, as he states that "[i]n terminating him for not abdicating his faith and for remaining unvaccinated, Defendant discriminated against him because of his perceived disability." (Compl. ¶ 145). These allegations are nothing more than conclusory statements and are woefully insufficient to allege that Gray regarded Plaintiff as disabled.

Because Plaintiff did not allege facts sufficient to plausibly demonstrate that Gray regarded him as disabled, he has failed to state a claim upon which relief can be granted and his ADA claim should be dismissed. *Twombly*, 550 U.S. at 570; *Speaks*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649 at *5.

    C.  <u>Plaintiff's Claim under Section 1983 Should Be Dismissed Because Gray Is a Private Employer, Not a State Actor.</u>

Count IV of Plaintiff's Complaint alleges that Gray's vaccine policy violated Plaintiff's "right to the free exercise of religion" under both the U.S. Constitution and the Georgia Constitution as well as a "Right to Privacy and Bodily Integrity" guaranteed by the Fourteenth Amendment Due Process Clause. (Compl. ¶ 148.)

---

[3] Notably, as set forth above, Plaintiff **did** allege that he sought an accommodation related to his religious beliefs. (*See, e.g.,* Compl. ¶¶ 2, 6.) Accordingly, Plaintiff understood the need to plead such facts when asserting a failure to accommodate claim.

Though Plaintiff tries to allege Gray's liability by listing multiple federal statutes, a Due Process claim under the Fourteenth Amendment and a claim related to freedom of religion under Article I are typically claims asserted against a state actor.

A plaintiff seeking vindication of a constitutional right against a private party must show "that he was deprived of a federal right by a person acting under color of state law." *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). The requirement of action "under-color-of-state-law" excludes "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). "Only in rare circumstances can a private party be viewed as a '[S]tate actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

To hold that a private party, such as Gray, is a state actor, the Court must conclude that one of the following three conditions is met:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise" ("nexus/joint action test")."

*Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). Moreover, courts in the Eleventh Circuit have repeatedly held that a private employer acts in a private capacity when making employment decisions. *See, e.g., Bond v. Cross Rds. Hosp.*

*Co.*, No. 4:05-CV-43 (CDL), 2006 U.S. Dist. LEXIS 82678, at *17 (M.D. Ga. Nov. 13, 2006); *Ogletree v. Necco*, No. 1:16-cv-01858-WSD-AJB, 2016 U.S. Dist. LEXIS 165566, at *11 (N.D. Ga. Nov. 9, 2016).

Though Plaintiff appears to argue that the State has "coerced" or "significantly encouraged" the action taken by Gray by stating that Gray was "deputized" by President Biden to "act as an arm for its Vaccine Mandate wishes" (Compl. ¶ 153), these conclusory allegations are insufficient to demonstrate that Gray was acting under color of state law.  Indeed, the Eleventh Circuit has held that even when political or social atmospheres may influence the business to make certain decisions, this does not constitute state action for the purposes of a claim under Section 1983. *See Lane v. Piedmont Healthcare, Inc.*, No. 1:21-CV-2430-TWT, 2021 U.S. Dist. LEXIS 213990, at *7, 2021 WL 5074494 (N.D. Ga. Oct. 13, 2021) (holding that a hospital was not a state actor when it changed its visitation policies based on governor's executive order but the state did not force those policies on the hospital or collaborate in the creation and enforcement of the policies). In sum, Plaintiff alleges no facts to suggest that Gray is anything more than a private actor who chose to implement a vaccine policy during a pandemic. Because Gray is not a state actor, Plaintiff fails to state a claim as to Count IV.

D. <u>Plaintiff's Claim for Intentional Infliction of Emotional Distress Should Be Dismissed Because Defendant's Behavior Was Neither Extreme Nor Outrageous.</u>

Plaintiff fails to plead sufficient facts to support a claim for Intentional Infliction of Emotional Distress ("IIED"). To establish a plausible claim of IIED, Plaintiff must plead sufficient facts to establish that: (i) the defendant intentionally or recklessly took some action, (ii) that was either outrageous or egregious, and (iii) the plaintiff actually suffered severe emotional injury (iv) as a result of the incident. *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 718 S.E.2d 88 (2011).

The standard for IIED is "stringent and difficult to establish. . . . This tort is reserved for only the most egregious behavior, which plaintiffs 'bear a heavy burden' in establishing." *Bradley v. Dekalb Cty., Ga.*, No. 1:10-CV-0218-TWT-GGB, 2010 WL 4639240, at *5 (N.D. Ga. May 17, 2010), *report and recommendation adopted*, 1:10-CV-218-TWT, 2010 WL 4638887 (N.D. Ga. Nov. 4, 2010) (quoting *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 484 S.E.2d 659, 664 (1997)) (emphasis added). Conduct is "extreme and outrageous" only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Yarbrough v. SAS Sys., Inc.*, 204 Ga. App. 428, 419 S.E.2d 507, 509 (1992)). Mere insults, indignities, threats,

annoyances, petty oppressions, or the fact the plaintiff was insulted or offended are insufficient. *Id.* The law intervenes only where "the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* (quoting *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 335 S.E.2d 445, 448 (1985)). "Even termination of employment or threats of termination are insufficient to establish a claim for [IIED]." *Id.*

Here, Plaintiff primarily complains that Defendant "treat[ed] Plaintiff's religious beliefs with contempt" and terminated Plaintiff based on his unwillingness to comply with company policy. (Compl. ¶¶ 173, 175.) He does not, however, allege any "extreme and outrageous" conduct by Defendant or plead any alleged threatening, harassing, or humiliating behavior. The fact that Plaintiff was terminated for refusing to comply with Gray's COVID-19 vaccination policy does not begin to approach the level of outrageousness required for an IIED claim to survive a motion to dismiss. In fact, federal district courts around the country have determined such in nearly identical cases involving employers terminating employees for refusing to comply with company's COVID-19 policies. *See, e.g., Cala v. Moorings Park Comm'n Health, Inc.*, No: 2:22-cv-635-JES-NPM, 2022 WL 17405581 at *5 (M.D. Fla. Dec. 2, 2022) (granting Defendant's motion to dismiss because terminating an employee under its COVID-19 vaccine policy was not

"beyond all possible bounds of decency" and that "Plaintiff has not alleged outrageous conduct in support of a plausible IIED claim"); *Finkbeiner v. Geisinger Clinic*, No. 4:21-CV-01903, 2022 WL 3702004 at *7 (M.D. Penn. Aug. 26, 2022) (the court dismissed Plaintiff's claim for IIED, determining that the company's COVID-19 vaccine policy was not extreme and outrageous and explaining that "it's not as though she was vaccinated or tested against her will. There was no gun-to-head, needle-to-the-shoulder, or swab-to-the-nostril moment.").

In the instant action, Plaintiff does not allege that Gray took any extreme or outrageous action. Instead, he simply alleges that his request for a religious accommodation was denied and he was thereafter terminated for failing to follow the company's policy and was terminated. Therefore, Plaintiff's IIED claim should be dismissed with prejudice under Rule 12(b)(6) because he does not plead any facts that could plausibly meet the elements of this claim. *Twombly*, 550 U.S. at 570.

E. Plaintiff's Claim for Practicing Medicine Without a License and Failure to Obtain Informed Consent Should Be Dismissed.

Count VI of Plaintiff's Complaint alleges that Defendant, "by mandating a medical procedure" is thus "practicing medicine without a license" and also "violates the doctrine of informed consent under both federal law and state law". (Compl. ¶¶ 191, 186.) As discussed more fully below, Plaintiff failed to state a claim for either of these allegations.

### i. Plaintiff Cannot State a Claim Against Gray for Practicing Medicine Without a License.

Though Plaintiff does not cite to a specific Georgia statute related to this claim, it is presumed that he argues that Gray is in violation of O.C.G.A. § 43-34-22, entitled "Practice of Medicine Without License Prohibited". The statute states that:

> If any person shall hold himself or herself out to the public as being engaged in the diagnosis or treatment of disease or injuries of human beings, or shall suggest, recommend, or prescribe any form of treatment for the palliation, relief, or cure of any physical or mental ailment of any person, with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever, or shall maintain an office for the reception, examination, or treatment of diseased or injured human beings… and shall not in any of these cases then possess a valid license to practice medicine under the laws of this state, he or she shall be deemed to be practicing medicine without complying with this article and shall be deemed in violation of this article.

From the outset, based on the plain language of the statute, Plaintiff's claim fails. First, Gray is not a "person." Next, Gray does not and Plaintiff has not alleged that Gray "hold[s] [itself] out to the public as being engaged in the diagnosis or treatment of disease or injuries of human beings." Finally, Gray did not and Plaintiff did not allege that Gray "receiv[ed]…any fee, gift, or compensation" as required under the statute. Instead, Plaintiff simply alleges that Gray "require[d] medical procedures to be ordered". (Compl. ¶ 184.) For these reasons, Plaintiff failed to state

a claim against Gray for practicing medicine without a license. *Twombly*, 550 U.S. at 570.

This conclusion is bolstered by the insight provided from the District Court in South Carolina as to the difference between an employer instituting and enforcing a vaccine policy and an individual engaging in the unauthorized practice of medicine. *See Rhoades v. Savannah River Nuclear Sols., Inc.*, 574 F.Supp.3d 322 (D.S.C. 2021). In *Rhoades*, the court reasoned that "the Mandate is a workplace safety requirement, meaning that the employee must be vaccinated to safely work at [company], not that vaccines are required for medical treatment." *Id.* at 336. It further explained that "employers…can make safety determinations based on available medical knowledge without themselves making a determination of medical necessity." *Id.*

### ii. Plaintiff Cannot State a Claim for Failure to Obtain Informed Consent.

Plaintiff's allegation that Gray "fail[ed] to obtain informed consent" similarly fails. (Compl. ¶ 6.) Again, though Plaintiff does not cite the relevant informed consent statute, under O.C.G.A. § 31-9-6.1(a):

> any person who undergoes any surgical procedure under general anesthesia, spinal anesthesia, or major regional anesthesia or any person who undergoes an amniocentesis diagnostic procedure or a diagnostic procedure which involves the intravenous or intraductal injection of a contrast material must

consent to such procedure and shall be informed in general terms of the following…

From the outset, it is clear that this statute does not apply to the facts at bar (and perhaps that is why Plaintiff fails to reference the statute altogether, despite claiming that Gray's actions "violate[] the doctrine of informed consent under…state law".) (Compl. ¶ 186.) Though Plaintiff attempts to argue that "Getting the [COVID-19] Vaccine is a medical procedure" because "[i]t involves a needle piercing the skin and irreversibly shooting into the body a liquid of experimental character", that is not the definition of a medical procedure requiring informed consent under Georgia law. (Compl. ¶ 182.) O.C.G.A. § 31-9-6.1(a) makes it very clear that the informed consent is required for the surgical and diagnostic procedures specifically identified. The COVID-19 vaccine decidedly does not fall under O.C.G.A. § 31-9-6.1(a), nor did Plaintiff allege that he actually received the vaccine (or "under[went] a[] procedure" as contemplated by the statute),[4] and thus Plaintiff fails to state a claim that Gray was required to provide informed consent to Plaintiff.

Lastly, the statutory provisions cited by Plaintiff do not prevent private employers like Gray from requiring employees to be vaccinated against COVID-19.

---

[4] Given that the thrust of Plaintiff's Complaint is premised upon his refusal to take the vaccine, it is clear that Plaintiff cannot allege that he took the vaccine.

Instead, 21 U.S.C. § 360bbb-3(e)(1)(A)(iii) requires that, for medical products under an EUA, "HHS must establish conditions to facilitate informed consent". 21 U.S.C. § 360bbb-3(e)(1)(A)(iii); *see also Rhoades*, 574 F. Supp. 3d at 344-45. This informed consent requirement "only applies to medical providers". *Valdez v. Grisham*, No. 21-cv-783-MV-JHR, 559 F. Supp. 3d 1161, 1171 (D.N.M. Sept. 13, 2021). Thus, Gray's COVID-19 policy does not violate the EUA provisions of the FDCA. *Bridges v. Hous. Methodist Hosp.*, 543 F.Supp.3d 525, 527 (S.D. Tex. 2021) (finding that federal law "confers certain powers and responsibilities to the Secretary of Health and Human Services in an emergency[,]" but that "[i]t neither expands nor restricts the responsibilities of private employers; [and] in fact, it does not apply at all to private employers[,]" nor does it "confer a private opportunity to sue the government, employer, or worker.").

Gray is not required to provide informed consent related to the COVID-19 vaccine under 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I) as Plaintiff alleges. The language of this statute requires the information to be provided to "individuals to whom the product is administered." *Id.* While Plaintiff alleges that Gray has "stepped into the shoes of the government and/or a health care provider", Plaintiff does not (and cannot) allege that Gray ever administered the COVID-19 vaccine, or that the COVID-19 vaccine was ever actually administered to Plaintiff. (Compl. ¶ 190); 21

U.S.C. § 360bbb-3(e)(1)(A)(ii)(I). Given the above, it is "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief", and thus Count VI should be dismissed. *See Maxwell v. Inner Harbour, LTD.*, No. 1:08–CV–2925–RWS, 2009 WL 1045478 at * 1 (N.D. Ga. April 20, 2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007)).

F. <u>Plaintiff's Negligence Claim Should Be Dismissed.</u>

Count VII of Plaintiff's Complaint is a claim for negligence against Gray. To sustain a claim for negligence under Georgia law, a plaintiff must establish (1) the existence of a duty on the part of the defendant, (2) a breach of that duty, (3) causation of the alleged injury, and (4) damages resulting from the alleged breach of the duty. *Parris v. 3M Co.*, 595 F.Supp.3d 1288, 1327 (N.D. Ga. 2022). A legal duty is "the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risk of harm". *Id.* Such a duty can arise from statute or common law *Id.* "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (citations and internal quotation marks omitted).

From the outset, Plaintiff fails to allege that Gray owes him any duty. All that is stated in his Complaint is that "Defendant had an extremely important duty to thoroughly research independently whether or not the Vaccine it was contemplating injecting into 8,000 or so employees was indeed 'safe and effective'". (Compl. ¶ 197.) Plaintiff fails to allege any cognizable statutory or common law duty that Gray owed to Plaintiff (or breached), and no such duty exists under the law. There are no allegations in the Complaint suggesting that Gray assumed any duty with respect to Plaintiff. It would be nonsensical to argue that under Georgia law, every company had a common law duty to "thoroughly research independently" the details and implications of every policy provision that it enacted. Thus, Plaintiff's negligence claim fails because Plaintiff failed to plead facts to support an essential element of a negligence claim.

## IV.     CONCLUSION

In sum, Plaintiff has failed to state a claim for which relief can be granted as to: (1) Violation of the ADA, (2) Violation of Section 1983, (3) Intentional Infliction of Emotional Distress, (4) Practicing Medicine Without a License and Failure to Obtain Informed Consent, and (5) Negligence. Accordingly, Defendant respectfully requests that this Court dismiss those claims.

Respectfully submitted this 27st day of February, 2023.

*s/Natalie N. Turner*
Natalie N. Turner
Georgia Bar No. 719646
Alexandra L. Milios
Georgia Bar No. 753596
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone: 404-881-1300
Facsimile: 404-870-1732
natalie.turner@ogletree.com
alexandra.milios@ogletree.com

*Counsel for Defendant Gray Media Group, Inc.*

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(D)

This is to certify that **Defendant Gray Media Group, Inc.'s Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiff's Original Complaint** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1(C).

*s/ Natalie N. Turner*
Natalie N. Turner
Georgia Bar No. 719646

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DAVID PLATTA,
          Plaintiff,

v.

GRAY MEDIA GROUP, INC.,
          Defendant.

CIVIL ACTION
NO. 1:23-cv-00236-VMC-JKL

**CERTIFICATE OF SERVICE**

I certify that on February 27, 2023, I electronically filed **Defendant Gray Media Group, Inc.'s Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiff's Original Complaint** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

Respectfully submitted this 27th day of February, 2023.

s/ Natalie N. Turner
Natalie N. Turner
Georgia Bar No. 719646